## Case No. 4,369.

### The ELLA HAND.

### SMITH et al. v. The ELLA HAND.

[2 Adm. Rec. 24.]

Superior Court, S. D. Florida. July 8, 1837.

Wm. Marvin, for libellants.
Adam Gordon, for respondents.

WEBB, J. The only question presented in this cause about which there is an entire disagreement in opinion between the parties, is whether or not the respondent, unassisted by others, could with his own company have saved his ship, and part of her cargo, by throwing overboard the residue. This is a question of much importance in a case like this, because it is only in its correct solution that we can acquire a knowledge of the actual danger to which the property was exposed, and consequently the real value of the services rendered in preserving it. On the part of the actors the witnesses are apparently of the opinion that, from the roughness of the sea and the difficulty of getting out and planting large anchors, in a proper position, Captain Pillsbury could not have saved his ship or any part of her cargo, without assistance, or if by possibility, he could have gotten his ship off the rocks before she had bilged, it must have been done at a sacrifice of the greater portion of her cargo, if not of the whole.

On the other hand the respondent and his mate (both of whom were sworn as witnesses in the cause) are decidedly of the opinion, that the ship's company could have relieved her by throwing overboard a part of the cargo, in a shorter time than was occupied by the salvors; and that in doing so it would not have been necessary to have sacrificed a greater portion of her cargo than was taken out by them. Whether or not the ship could have been gotten off the rocks by her own company without sacrificing a larger portion of her cargo than was taken out by the libellants, is a question which cannot now be determined. The witnesses who saw the transaction cannot agree about it, and it is therefore impossible for the court to form any correct opinion on the subject. Or whether the respondent would have commenced throwing overboard his cargo in sufficient time to have saved his ship, had he not received assistance, is also a question which this court cannot decide. But of one thing it is fully satisfied; and that is that Captain Pillsbury

with his own crew and the assistance of his passengers might have carried out anchors, and lightened his ship in time by throwing over cargo, to have enabled him to haul her off the rocks, before the weather was such as materially to have endangered her. To this opinion the court would have arrived from the testimony of the witnesses on the part of the libellants, even had there been no contrariety of evidence coming from the other side; for notwithstanding they all stated that they did not believe she could or would have been gotten off had no assistance been afforded, still the reasons assigned for this belief and the details of the circumstances which led to it produced on the mind of the court a contrary impression. They admitted that but one of the ship's hatchways was used by the sailors in taking out the cargo—that the ship's company was sufficiently large to have worked that one hatch—that the cargo was of a character not difficult to handle, either from bulk or weight, and might have been handled by the crew, and that it would not have occupied more time in taking cargo out and throwing it overboard than in putting it on the decks of the vessels employed to receive it.

They allege however that it would have been impossible for the ship's company to have worked at the hatchway, and at the same time to have carried out the anchors, which were necessary to prevent her going further on the reef as she was lightened, even if they could have carried out the anchors at all, which some of them doubted. But admitting that they could not have carried on both these operations at the same time, they still had sufficient time to have performed them singly and to have relieved the ship before the weather became bad; for it will be recollected that the weather did not change for the worse until about 18 hours after the ship first floated; and that according to all their opinions six hours would have been ample time for them to have taken out their anchors, provided it could have been done by them at all; and that with proper management any anchor belonging to the ship might have been taken out in her long-boat, the court is perfectly satisfied.

The court is aware that masters of vessels are generally not disposed to sacrifice any portion of their cargoes by throwing them overboard so long as a slight expectation or even hope exists of saving the property without; and hence it is they very often delay this operation until it is too late, to be available to them. This might have been the case with Captain Pillsbury. He might have put off a resort to this last and unpleasant alternative, under the hope of extricating himself by other means, until the time had passed by when it would have been of any service to him; and in that way (without assistance) might have lost his

ship. But the court repeats that it is fully satisfied, had he resorted to this means of preservation in time, he might have saved his ship and a part of his cargo, without the assistance of the salvors; and therefore, without that assistance, it was not, as is most frequently the case with vessels stranded upon this reef, necessarily doomed to destruction.

The services rendered by the libellants, however, in this case have been of much importance, for it is conceded that had their assistance not been given much of the cargo must have been thrown overboard, and would have been totally lost. To the entire extent of the value of that portion of the cargo, therefore, have they rendered services to its owners, even if it were known that the ship and residue of the cargo were not in danger. What proportion of it must have been thrown over for the preservation of the rest is not known, but it is admitted by all that at least the quantity taken out by the salvors must have been sacrificed, if not a larger proportion. Under all the circumstances therefore the court is of the opinion that the sum of $7,500 should be decreed to them as a compensation for their services. That sum is less than the appraised value of the goods which were taken out, and which viewed in the most favorable light must have been lost to the owners but for their assistance, independent of the relief which their presence and exertions afforded from the anxiety which must necessarily have been felt, growing out of the exposed condition of the entire property and the responsibility which existed of its total loss; and independent also of the probability that a large portion must have been sacrificed had Captain Pillsbury been left to his own resources for its preservation.

The ship and cargo have been appraised at $33,200. This appraisement has been made in reference to the extraordinary pressure which operates in the money market, and is even deemed low under these circumstances; and yet the salvage and expenses decreed in the case will be less than 25 per centum upon that appraisement, a sum which the court believes not too high for the services rendered and the value of the property involved.

Wherefore it is considered, adjudged and decreed, that after giving due notice of the time and place of sale, the marshal proceed to sell on Tuesday, the 11th instant, at the warehouse of F. A. Browne in Key West, for cash, at public outcry, to the highest bidder, so much of the cargo of the bark Ella Hand as will be sufficient to raise the sum of seven thousand five hundred dollars and the costs of this suit, and that he pay the same into the registry of the court; and that he then restore the said bark and the residue of her cargo to the respondent Pillsbury, for and on account of

all concerned and interested in the same. And it is further ordered that the clerk, after receiving the said money, pay it over to those interested in the same as salvors in this case in full compensation for their services rendered to the said bark and cargo and to others entitled thereto for the costs of this suit.